IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

VIRGEN M. CORCINO-RODRIGUEZ, et
al.,

      **Plaintiff(s)**

        **v.**

STATE INSURANCE FUND CORPORATION,
et al.,

      **Defendant(s)**

**CIVIL NO.** 10-1405 (JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Before the Court is Defendants' Motion to Dismiss Plaintiffs' § 1983 Complaint for civil rights violations (Docket No. 22). Plaintiffs claim they were discharged from their public employment positions in violation of their First Amendment, Due Process and Equal Protection rights. For the reasons set forth, the Court **GRANTS** in part and **DENIES** in part Defendants' motion.

### FACTUAL AND PROCEDURAL BACKGROUND

<u>Plaintiffs Corcino's and Burgo's trajectory at the SIFC</u>

On or around the year 2003, the State Insurance Fund Corporation (hereinafter "SIFC") became aware that as a health care provider it was required to comply with the Health Insurance Portability and Accountability Act of 1996 (hereinafter "HIPAA"). This required the SIFC to recruit

Civil No. 10-1405                                                2

qualified   personnel   to   set   up   the   necessary   compliance
mechanisms. Plaintiff Corcino was selected by the SIFC for the
temporary  position  of  Privacy  Security  and  Compliance  Officer
(hereinafter  PSC  Officer),  a  position  created  around  November
2003 to lead the HIPAA compliance efforts. Plaintiff Corcino was
recruited  by  the  SIFC  given  her  education,  experience  and
expertise in HIPAA compliance, acquired during her tenure at the
Puerto  Rico  Cardiovascular  Center  Corporation  from  2001  until
2003.

     Once  Plaintiff  Corcino  assumed  her  temporary  appointment,
she  started  work  on  the  HIPAA  compliance  efforts  with  various
divisions  of  the  SIFC.  Her  job  included  coordination  with  the
SIFC's Budget Office in order to design the proper allocation of
funds, as well as with the Human Resources Office to create the
necessary  career  positions  for  the  Compliance  Office  staff.
Plaintiff Corcino received excellent evaluations during her time
as PSC Officer.

     As Plaintiff Corcino's work on her temporary position began
to  bear  fruit,  she  was  granted  career  status  as  PSC  Officer
around  June  2004.  The  appointment  was  the  end  result  of  a
process which started with an internal job announcement posted
for the position. Plaintiff Corcino satisfied all of the SIFC's
requirements during the appointment process.

Civil No. 10-1405                                                    3

At some time during April of 2005, Plaintiff Burgos, a long time employee of the SIFC, was transferred to the Medical Area to work under the supervision of Plaintiff Corcino. She was promoted to the career position of Technical Aide. Plaintiff Burgos satisfied all of the agency's requirements during the appointment process. Plaintiff Burgos was assigned to work under the supervision of Plaintiff Corcino to assist her with HIPPA compliance efforts.

In June 2005, the SIFC's Board of Directors approved Administrative Order 05-03 officially creating the HIPAA Compliance Office and several corresponding permanent career staff positions. On or about this time, Plaintiff Corcino was appointed to the trust position of Special Aide II.

On October 31, 2007, Plaintiff Corcino requested reinstallation to her career position of PSC Officer, which became effective on July 18, 2008. During this time, Plaintiff Burgos remained in her career position of Technical Aide.

Civil Rights Violations

The SIFC is a politically charged environment. Employees at the SIFC organize themselves into de-facto political action committees which support either the "Partido Nuevo Progresista" (hereinafter "PNP") or the "Partido Popular Democrático" (hereinafter "PPD"). These political groups actively engage in fund raising activities, provide support during electoral

campaigns, and volunteer for vote counting. In large part due to this custom, knowledge of political affiliation is commonplace within the walls of the SIFC.

The 2008 Puerto Rico elections gave the PNP control of the Executive and the Legislative Assembly. Shortly after the elections, Defendant Álvarez was appointed Administrator of the SIFC. Also during that time, Plaintiffs, as well as many other SIFC employees hired during the PPD's turn in power, received notices of dismissal. According to plaintiffs, the dismissals were part of a witch-hunt led by Defendants to purge the SIFC of PPD supporters. The campaign included the restructuring of the HIPAA Compliance Office set up by Plaintiff Corcino, which was charged with, among other tasks, the investigation of political discrimination.

In order to prevent conflicts of interest, the HIPAA Compliance Office's chain of command had been organized to directly report to the Administrator and/or, the Board of Directors. Its function was, in essence similar to that of an internal auditor. As early as February 11, 2009, its independence of action was subverted when Defendant Álvarez placed the Compliance Office under the Operations Division headed by Acting Operations Director, Defendant Padilla. Shortly thereafter, in February of 2009, Defendant Álvarez relieved Plaintiff Corcino of her supervisory duties over Plaintiff

Civil No. 10-1405                                                        5

Burgos and other SIFC employees. Plaintiff Corcino requested reconsideration of these decisions via memorandum dated February 23, 2009 to Defendant Álvarez. However, Defendant Álvarez took no action.

Months later, Defendant Álvarez informed Plaintiffs Corcino and Burgos of her intent to declare null and void their appointments via a memorandum dated January 8, 2010. The reason being, according to the memo, that their appointments were because they were posted through internal job announcements rather than external job announcements.

At some point before Plaintiffs received the January 8 memo, the Defendants engaged an attorney, Mr. Feijoo, to give a legal opinion regarding the legality of the appointment of employees at the SIFC conducted through internal job announcements. The appointments that Mr. Feijoo was charged with examining were of all employees hired or appointed from 2001-2008, while the PPD was in power. No appointments made before 2001 were reviewed. Mr. Feijoo concluded that many of the appointments he was charged with analyzing did not meet legal scrutiny.

Defendant Álvarez issued the dismissal memo to Plaintiffs relying on Mr. Feijoo's opinion regarding the appointments he was charged with reviewing. However, there is apparently no evidence that Plaintiffs' files were reviewed.

Civil No. 10-1405                                                     6

As part of the dismissal procedures, Defendant Álvarez and Defendant Rivera, Associate Director of Human Resources at SIFC held informal administrative hearings for employees whose appointments had been deemed void and would thus be dismissed. According to Plaintiffs these hearings do not comply with minimal Due Process requirements and, along with Mr. Feijoo's legal opinion regarding the illegal appointments, are a mere attempt by Defendants to immunize themselves against claims of constitutional violations. Furthermore, though the SIFC's Personnel Regulations allow the Plaintiffs to access all documents related to their appointment and dismissal, Plaintiffs were denied access to these records. Moreover, an audit report related to Plaintiffs employment has also not been disclosed to the Plaintiffs.

On May 11, 2010, Plaintiff Corcino was informed that the examiner had recommended that her employment with the SIFC be declared null and void. She was removed from her position effective May 11, 2010. Defendants continue using the same internal job announcement and appointment process that they found to be illegal in Plaintiffs' case.

**STANDARD OF REVIEW**

Motion to Dismiss Standard of Review

In <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss under

Civil No. 10-1405                                                        7

Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 599). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990). While Twombly does not require of plaintiffs a heightened fact pleading of specifics, it does require enough facts to have "nudged their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555.

In Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937 (2009), the Supreme Court upheld Twombly and clarified that two underlying principles must guide this Court's assessment of the adequacy of a plaintiff's pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S.Ct. at 1949-50.

The First Circuit has recently relied on these two principles as outlined by the Supreme Court. See Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009). "First, the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions.
Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." Iqbal,
129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555). "Second,
only a complaint that states a plausible claim for relief
survives a motion to dismiss." Iqbal, 129 S.Ct. at 1950 (citing
Twombly, 550 U.S. at 556). Thus, any nonconclusory factual
allegations in the complaint, accepted as true, must be
sufficient to give the claim facial plausibility. Iqbal, 129
S.Ct. At 1950. Determining the existence of plausibility is a
"context-specific task" which "requires the court to draw on its
judicial experience and common sense." Id. "[W]here the well-
pleaded facts do not permit the court to infer more than the
mere possibility of misconduct, the complaint has alleged - but
it has not 'show[n]' - 'that the pleader is entitled to
relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore,
such inferences must be at least as plausible as any "obvious
alternative explanation." Id. at 1950-51 (citing Twombly, 550
U.S. at 567).

First Amendment

     Pursuant to the First Amendment, non-policymaking public
employees are protected from adverse employment actions based on
their political opinions. Marrero-Gutierrez v. Molina, 491 F.3d
1, 9 (1st Cir. 2007). To establish a prima facie case of

Civil No. 10-1405                                                     9

political discrimination in violation of the First Amendment, a plaintiff must show that party affiliation was a substantial or motivating factor behind a challenged employment action. Id. Namely, for purposes of Federal Rule of Civil Procedure 8(a)(2), a plaintiff must properly plead that: (1) the plaintiff and the defendant belong to opposing political affiliations, (2) the defendant has knowledge of the plaintiff's affiliation, (3) a challenged employment action occurred, and (4) political affiliation was a substantial or motivating factor behind the challenged employment action. Martínez-Velez v. Rey-Hernández, 506 F.3d 32, 39 (1st Cir. 2007). "While plaintiffs are not held to higher pleading standards in § 1983 actions, they must plead enough for a necessary inference to be reasonably drawn." Marrero-Gutierrez, 491 F.3d at 9 (internal citations omitted).

Due Process

The Fourteenth Amendment protects against deprivation of life, liberty, or property without Due Process of law. U.S. Const. Amend. XIV. This constitutional guarantee has both procedural and substantive aspects. See Parker v. Hurley, 514 F.3d 87,101 (1st Cir. 2008). "The Supreme Court has consistently held that substantive due process rights are violated by executive action when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Velazquez v. Hernández, 09-1692, 2010 U.S. Dist. LEXIS 90337 at

*15 (D.P.R. Aug. 27, 2010)(internal citations ommitted). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protections of liberty and property." Id. (citing Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).

In order to establish a procedural due process claim under Section 1983, a plaintiff "must allege first that it has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process." Marrero-Gutierrez, 491 F.3d at 8 (citing PFZ Props., Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991)). "The Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment." Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005)(citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); Galloza v. Foy, 389 F.3d 26, 33 (1st Cir. 2004)). These employees have a right to at least an informal hearing before they are discharged. See Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988).

Moreover, the First Circuit has stated that "to establish a constitutionally protected property interest in employment, a plaintiff must demonstrate that she has a legally-recognized

expectation that she will retain her position. Id. (citing Santana v. Calderón, 342 F.3d 18, 24 (1st Cir. 2003). "A legitimate expectation of continued employment may derive from a statute, a contract, or an officially sanctioned rule of the workplace." Id. As the First Circuit has established "under the laws of Puerto Rico, career or tenured employees have property rights in their continued employment." Id. (citing González-De-Blasini v. Family Dept., 377 F.3d 81, 86 (1st Cir. 2004)).

**DISCUSSION**

Plaintiffs' First Amendment Political Discrimination Claim

Both Plaintiffs have sufficiently pled three of the four elements that comprise a First Amendment discrimination claim. Plaintiffs clearly espouse that they belong to the PPD, and that all Defendants belong to the PNP. Martinez-Velez v. Rey-Hernandez, 506 F.3d at 39. They also make several allegations that Defendants were aware of Plaintiffs' affiliation to the PPD. They plead that they were both open supporters of the PPD; that the politically charged environment at the SIFC and the way employees organized into political groups provided for all or most employees to know of each other's political affiliation; that Defendants indeed knew of Plaintiffs' affiliation to the PPD; and that Plaintiffs were part of a group of employees whose appointments came under review, who were solely comprised of PPD appointees. Id. Plaintiffs also satisfactorily plead that

political affiliation was the motivating factor behind the challenged employment actions. Id.

Plaintiff Corcino has also satisfactorily pled that a challenged employment action was taken against her by Defendant Álvarez. Id. According to Plaintiff Corcino, during the month of February of 2009, Defendant Álvarez took away her supervisory duties over Plaintiff Burgos and other employees. Then, by memorandum dated January 8, 2010 Defendant Álvarez informed Plaintiff Corcino of his intent to declare null and void her appointment. Finally, she was officially removed from her position on May 11, 2010. Plaintiff Corcino has met the pleading standard for her claim of First Amendment political discrimination against Defendant Álvarez.

Plaintiff Corcino has not, however, sufficiently pled her political discrimination claim against the other Defendants. She has not pled that Defendant Rivera took a challenged employment action against her. Regarding Defendants Padilla Diaz and Perez Carpio, her only allegation against them to that effect is that one of them, or both, ordered her to suspend all training sessions of SIFC employees. Plaintiff is apparently unable to identify which one of them, or if it was both, gave her the order to stop training employees. Also this sole allegation is not sufficient to establish that Defendant Padilla Diaz and Perez Carpio took an employment action that was adverse to her.

Civil No. 10-1405                                                    13

Plaintiff Burgos has also satisfactorily pled that
Defendant Álvarez took a challenged employment action against
her. She was also a recipient of the same memorandum that
Defendant Álvarez sent, dated January 8, 2010, by way of which
she was informed that her appointment was to be declared null
and void. However, Plaintiff Burgos has not pleaded that
Defendants Rivera, Padilla Diaz or Perez Carpio took any
employment action that was adverse to her. Therefore, her
political discrimination claim against these Defendants has not
met the pleading standard. Her claim stands only against
Defendant Álvarez.

<u>Plaintiffs' Due Process Claim</u>

Given that they both plead that they are career employees,
Plaintiffs Corcino and Burgos have both met the pleading
standard for the first prong of their Due Process claim.
<u>Gonzalez-de-Blasini v. Family Dept.</u>, 377 F.3d at 86. As career
employees, they both have a property interest in their continued
employment. <u>Marrero-Gutierrez v. Molina</u>, 491 F.3d at 8. And as
to the second prong of their Due Process claim, Plaintiffs have
met the pleading standard against Defendants Álvarez and Rivera.
According to Plaintiffs, Defendants Álvarez and Rivera were the
architects of the process by which all of the employees at the
SIFC that were facing dismissal were provided with informal
hearings that were constitutionally insufficient. Plaintiffs

Civil No. 10-1405                                             14

allege that the hearings were grossly inadequate since Plaintiffs were not provided with any discovery, nor did they have the chance to examine any documents used by the Defendants to terminate them. They did not have a meaningful opportunity to dispute the employment decisions that were taken against them. They sufficiently plead that they were deprived of their property interest without constitutionally adequate process. Id.

Plaintiffs have not met the pleading standard for an Equal Protection claim. They make vague statements of PPD members being treated differently than PNP members, and statements regarding what the public policy of Puerto Rico is or should be. They barely plead any facts or specifics. Their Equal Protection claim does not meet the pleading standard for Iqbal and Twombly.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss is denied as to Plaintiffs' claim of political discrimination against Defendant Álvarez. It is also denied as to Plaintiffs' claims of Due Process violation against Defendants Álvarez and Rivera. The claims of First Amendment Political Discrimination and Due Process against the other Defendants are dismissed. The Equal Protection claims are also dismissed as to all Defendants. Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of March, 2011.

S/Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge