IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| VIRGEN M. CORCINO-RODRÍGUEZ, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>STATE INSURANCE FUND CORPORATION, et al.,<br><br>    Defendants. | CIVIL NO.: 10-1405 (MEL) |

**OPINION AND ORDER**

**I.    PROCEDURAL HISTORY**

On May 14, 2010, plaintiffs Virgen M. Corcino-Rodríguez ("Corcino") and Myriam Burgos Ocaña ("Burgos") (collectively, "plaintiffs") filed a complaint under 42 U.S.C. § 1983 against, *inter alios*, defendants State Insurance Fund Corporation ("SIFC"), Zoimé Álvarez-Rubio ("Álvarez"), and Saúl Rivera-Rivera ("Rivera") (collectively, "defendants").  (D.E. 1). Plaintiffs allege claims under the First Amendment for political discrimination, the Due Process Clause,[1] and the Equal Protection Clause,[2] as well as claims for violations of the Constitution and laws of the Commonwealth of Puerto Rico.

Defendants filed a motion to dismiss on March 21, 2012, under the doctrine known as Younger abstention.  (D.E. 54).  Defendants filed a supplemental motion on April 12, 2012, also on the issue of abstention.[3]  (D.E. 58).  In said motion, defendants brought to the attention of the court a grant of certiorari by the Puerto Rico Supreme Court in González-Segarra, *et al.* v. State

---

[1] Plaintiffs allege deprivations of procedural rather than substantive due process, as they claim that defendants deprived plaintiffs of their "property rights without due process of law." (D.E. 1, ¶ 1; see also D.E. 1, ¶¶ 94–103).
[2] Plaintiffs' equal protection claims have been dismissed with respect to all defendants. (D.E. 31).
[3] Defendants filed said motion as an "informative motion," but it was effectively a supplemental motion to the motion to dismiss, also regarding the issue of abstention.

Insurance Fund Corporation, Civ. No. CC-2011-01051, KLRA 201100611.  (D.E. 58, at 2). Without explicitly referring to the doctrine of abstention established by Railroad Commission v. Pullman Co., 312 U.S. 496 (1941), defendants argued that "[p]laintiffs' claims in this case are centered on this issue and the same set of facts of González-Segarra, and will depend on the judgment issued by the Supreme Court."  Id.  One of the issues that will be addressed by the Puerto Rico Supreme Court, according to defendants, is "the validity of the nullification of the appointments of twenty three (23) employees, who like Plaintiffs', were appointed through a [*sic*] 'internal' announcement procedure."  Id.

A court may choose to stay a case under the Pullman doctrine if the case meets a two-part test: "(1) substantial uncertainty exists over the meaning of the state law in question, and (2) settling the question of state law will or may well obviate the need to resolve a significant federal constitutional question."  Batterman v. Leahy, 544 F.3d 370, 373 (1st Cir. 2008).  On October 23, 2012, the court denied defendants' motion to dismiss on the ground of Pullman abstention because defendants failed to meet the first prong.[4]  (D.E. 154, at 7–8).  Specifically, defendants failed to identify which Puerto Rico provision or law was ambiguous or had a substantially uncertain meaning, much less the nature of the ambiguity or uncertainty.

On February 7, 2013, the U.S. Court of Appeals for the First Circuit remanded a separate case with instructions to stay proceedings pending the Puerto Rico Supreme Court's decision in González Segarra.  Casiano-Montañez v. State Ins. Fund Corp., No. 12-1453, 2013 WL 494354 (1st Cir. Feb. 7, 2013).  Defendants and plaintiffs have filed briefs on the issue of whether the First Circuit's decision is applicable in the instant case.  (D.E. 164; 165; 166).  Following the

---

[4] Defendants' motion was also denied on the ground of Younger abstention.  (D.E. 154, at 1–5).  As the First Circuit's reasoning in Casiano-Montañez v. State Ins. Fund Corp., No. 12-1453, 2013 WL 494354 (1st Cir. Feb. 7, 2013), regarding the Younger abstention doctrine is consistent with the opinion and order rendered by the undersigned (D.E. 154), it is unnecessary to revisit this issue.

First Circuit's decision in Casiano-Montañez, this court determines upon reconsideration of its previous order (D.E. 154), for the reasons set forth below, that the proceedings of the instant case shall be stayed pending the Puerto Rico Supreme Court's decision in González Segarra.

II.    ANALYSIS

Casiano-Montañez and the instant case arise out of the same broad set of facts.[5]  Álvarez became the Administrator of the SIFC on January 2, 2009, shortly after elections in Puerto Rico. Álvarez ordered an audit of personnel appointments made at the SIFC between 2001 and 2008. This investigation revealed that 232 appointments had been made through internal job postings rather than external announcements.  On October 8, 2009, attorney José Roberto Feijoo drafted a legal opinion at the behest of SIFC indicating that "'internal job announcements' permitted under the SIFC's Personnel Regulations first require an extensive written 'marketing plan and audit of positions' by the Administrator of the SIFC."  (D.E. 1, ¶ 59; D.E. 1 in Civ. No. 11-1002 (DRD), ¶ 119).  Plaintiffs in both Casiano-Montañez and the instant case were among those persons who received notices of intent to dismiss as a result of this audit.  Specifically, Álvarez sent a memorandum dated January 8, 2010, to plaintiffs in both cases informing them of SIFC's intent to declare their appointments null and void because they had been conducted through internal job announcements, rather than external ones, allegedly in violation of the "merit principle" espoused in the Public Service Human Resources Administration Act, P.R. Laws Ann. tit. 3, §§ 1461–1462h.  (D.E. 1, ¶¶ 49, 62; D.E. 81-1, ¶ 38; D.E. 88-2, ¶ 38; D.E. 1 in Civ. No. 11-1002 (DRD), ¶¶ 115, 122); Casiano-Montañez, 2013 WL 494354, at *1.

---

[5] For the purpose of determining that Casiano-Montañez and the instant case are sufficiently analogous such that the First Circuit's order to stay the proceedings in the former is relevant to the instant case, the factual background of this case is taken from the complaint (D.E. 1) and uncontested material facts proposed by defendants and admitted or not successfully controverted by plaintiffs (D.E. 81-1; 88-2).

The SIFC offered informal administrative hearings to plaintiffs in both cases. Each plaintiff requested a hearing. After the hearings, the SIFC affirmed Álvarez's decision with respect to each plaintiff. All of the plaintiffs in both cases were terminated or demoted between March and September of 2010. Each plaintiff, except for Corcino, filed administrative appeals before the SIFC's Board of Appeals. (D.E. 1, ¶¶ 67, 71; D.E. 81-1, ¶¶ 62, 65, 68–69; D.E. 88-2, ¶¶ 62, 65, 68–69; D.E. 1 in Civ. No. 11-1002 (DRD), ¶¶ 27–98, 126); Casiano-Montañez, 2013 WL 494354, at *1.

The causes of action in both cases, as alleged in the complaints, are substantially identical.[6] In both cases, plaintiffs allege that their adverse employment decisions constituted political discrimination and procedural due process violations. "In order to establish a procedural due process claim under section 1983, a plaintiff 'must allege first that it has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process.'" Marrero-Gutiérrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007) (quoting PFZ Props., Inc. v. Rodríguez, 928 F.2d 28, 30 (1st Cir. 1991)). Thus, in support of their due process claims, plaintiffs allege that they had property interests in their SIFC positions under Puerto Rico law, and were not provided with constitutionally adequate process when they were deprived of said positions. (D.E. 1, ¶¶ 94–103; D.E. 1 in Civ. No. 11-1002 (DRD), ¶¶ 151–59).

As the First Circuit noted, the SIFC's "decision to nullify the appointments made pursuant to internal hiring calls has spawned numerous other lawsuits in both Puerto Rico and

---

[6] On March 29, 2011, this court dismissed all of plaintiffs' claims under the Equal Protection Clause. (D.E. 31, at 14). There is no indication that the Casiano-Montañez plaintiffs' equal protection claims have been dismissed. See 2013 WL 494354, at *1. Nevertheless, it is not readily apparent that this distinguishes the two cases in any material way. As in Casiano-Montañez, it is plaintiffs' procedural due process claim which relies on the settling of a question of state law. If anything, the fact that there is one fewer federal claim independent of state law in the instant case implies that the rationale for Pullman abstention is greater here than in Casiano-Montañez.

federal courts." Casiano-Montañez, 2013 WL 494354, at *1. As here, the plaintiffs in one such case, González Segarra, "argued that internal hiring calls were legal, that their due process rights were violated, and that political discrimination motivated their dismissals or demotions." Id. The Puerto Rico Court of Appeals determined that the appointments were valid, but that the petitioners had failed to establish a due process violation or a prima facie case of political discrimination. Certiorari to the Puerto Rico Supreme Court has been granted in González Segarra; the case has been fully briefed and awaits decision. Ultimately, the First Circuit concluded that a stay was appropriate due to the pending case before the Puerto Rico Supreme Court.

As an initial matter, "it is well settled that the pendency of an action in state court is not a per se bar to related federal court proceedings." Id. Rather, "federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them.'" Id. (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). Nevertheless, "[t]his duty … is not absolute." Id. In particular, under the doctrine of abstention set forth in Pullman, when a "'federal constitutional challenge turns on a state statute, the meaning of which is unclear under state law' … a federal court … 'should stay its hand in order to provide the state court an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question.'" Ford Motor Co. v. Meredith Motor Co., Inc., 257 F.3d 67, 71 (1st Cir. 2001) (quoting Harris County Com'rs Court v. Moore, 420 U.S. 77, 84 (1975)). Pullman abstention is a discretionary doctrine. See Fideicomiso de la Tierra del Caño Martín Peña v. Fortuño, 604 F.3d 7, 16 (1st Cir. 2010), cert. denied, 131 S. Ct. 1600, 179 L. Ed. 2d 499 (U.S. 2011); Currie v. Group Ins. Comm'n, 290 F.3d 1, 11 (1st Cir. 2002). This doctrine "serves a dual purpose: it avoids the waste of a tentative decision as well as the friction of a

premature constitutional adjudication." Ford Motor Co., 257 F.3d at 71 (internal quotations omitted). As discussed above, two elements must be met for a court to choose to stay a case under the Pullman doctrine: "(1) substantial uncertainty exists over the meaning of the state law in question, and (2) settling the question of state law will or may well obviate the need to resolve a significant federal constitutional question." Batterman, 544 F.3d at 373.

The guarantee of procedural due process in the U.S. Constitution protects persons from deprivations of property by the state without due process of law. Nonetheless, "property interests are not defined by the Constitution." Lowe v. Scott, 959 F.2d 323, 334 (1st Cir. 1992). "'Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ….'" Id. (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)). As such, "[i]n order for plaintiffs to have procedural due process rights in their employment, each plaintiff must have had a reasonable expectation, based on a statute, policy, rule, or contract, that he or she would continue to be employed." Concepción Chaparro v. Ruiz-Hernández, 607 F.3d 261, 264 (1st Cir. 2010). "Under Puerto Rico law, … [a]s a general rule, those who lawfully hold ['career'] positions have a protected property interest in continued employment in those positions." Costa-Urena v. Segarra, 590 F.3d 18, 27 (1st Cir. 2009). In contrast, "[e]mployees whose hiring contravened Commonwealth laws and regulations … are not vested with a property interest in their career positions." Casiano-Montañez, 2013 WL 494354, at *3. Rather, the career appointments of such employees "'are null and void *ab initio*' and no due process protections attach." Id. (quoting Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988)).

Whether plaintiffs in this case "have a property interest in their career positions at the [SIFC] hinges on the legality of their appointments, the very issue that the Commonwealth's

6

highest court is poised to decide in González Segarra." Id.  Plaintiffs contend that the First Circuit had "no grounds in support" of its "assert[ion] that the nullity issue regarding the appointments and promotions involves complex questions of statutory and regulatory interpretation." (D.E. 166, ¶ 6).  The First Circuit, however, clearly pointed to the fact of "divergent legal interpretations of the agency and the intermediate appellate court" in support of its conclusion that "substantial uncertainty surrounds the issue."  Casiano-Montañez, 2013 WL 494354, at *3.  It also noted several "unsettled issues of Puerto Rico administrative and statutory law," including "questions concern[ing] the requirements of the merit principle, the power of the [SIFC]'s administrator to limit competition for certain positions, the ability of a subsequent administrator to countermand the decisions of the predecessor, and the role of Commonwealth-wide fiscal measures aimed at reducing public payroll costs." Id.  As the First Circuit points out:

> Resolution of these unsettled issues of Puerto Rico administrative and statutory law may obviate the need to decide whether the plaintiffs received constitutionally adequate process prior to losing their positions.  At the very least, once the Puerto Rico Supreme Court has spoken, adjudication of any remaining constitutional questions may indeed become greatly simplified.

Id. (internal quotations and citations omitted).  Given that Casiano-Montañez, González Segarra, and the instant case arise from the same events at the SIFC and that all three sets of plaintiffs have articulated a theory of procedural due process violations which depend on these "complex questions of statutory and regulatory interpretation" arising from the question of whether the SIFC's internal job announcements violated the merit principle, id., it is clear that the First Circuit's rationale for ordering a stay in Casiano-Montañez applies with full force in this case.[7]

---

[7] Plaintiffs argue that, because Corcino did not file an appeal before the SIFC's Board of Appeals, this case is "clearly distinguishable from Casiano." (D.E. 166, ¶ 144).  Plaintiffs, however, offer no reason why this distinction is relevant.  The issue to be addressed by the highest Commonwealth court concerns whether the procedures underlying the appointments for the employees in González Segarra, Casiano-Montañez, and the instant case are valid under Puerto Rico law.  Whether one such employee, after termination, chose not to file an internal administrative appeal seems not to have any bearing on whether the initial appointment was valid.  As such,

7

Plaintiffs argue that defendants in Casiano-Montañez "failed to refute that the SIFC internal appeals process' [*sic*] lacked jurisdiction to entertain a political discrimination that, consequently, removed this issue from the scope of review by the PR Supreme Court." (D.E. 166, ¶ 5). It is unclear how this distinguishes Casiano-Montañez in a way favorable to plaintiffs. Even if plaintiffs' statement is assumed to be true, the First Circuit nonetheless determined that a stay under Pullman was appropriate. As in the instant case, plaintiffs in Casiano-Montañez alleged a claim of political discrimination under the First Amendment. The First Circuit "recognize[ed] … that the plaintiffs' political discrimination claim is not synonymous with their due process claim and, thus, will not necessarily be resolved by answering the unsettled state law question." Casiano-Montañez, 2013 WL 494354, at *4. A "claim that is not rendered moot by the Puerto Rico Supreme Court's decision," however, can be addressed "in federal court at a later date." Id. Plaintiffs' concern that their "day in court" will be "preempt[ed]" is unwarranted. (D.E. 166, ¶ 8). A stay under Pullman does not constitute a "surrender[ of] federal court jurisdiction over either federal claim, but simply [a] stay[ of] the proceedings until the related Commonwealth proceedings have run their course." Casiano-Montañez, 2013 WL 494354, at *4. As such, plaintiffs may raise their claims pertaining to political discrimination in this court after the Puerto Rico Supreme Court has ruled on the unresolved issue of state law.

The First Circuit also determined that considerations of federalism, comity, and sound judicial administration point to the prudence of abstention in Casiano-Montañez. There is something "'particularly offensive about hijacking a case that is pending on the docket of a state's highest tribunal.'" Id. (quoting Cruz v. Melecio, 204 F.3d 14, 24 (1st Cir. 2000)). Even though the instant proceedings may be at a more advanced stage than the ones in Casiano-

---

plaintiffs fail to establish that this distinction should serve as a reason to reject the application of Casiano-Montañez in the instant case.

Montañez, as plaintiffs argue, the reasoning of the First Circuit decision applies here nonetheless. Absent a stay, a ruling from the Puerto Rico Supreme Court on this complex issue of state law that is contrary to one made by this court "would render th[is] court's opinion 'merely advisory—an outcome we seek to avoid in any case.'" Id. (quoting Currie v. Grp. Ins. Comm'n, 290 F.3d 1, 11 (1st Cir. 2002)).  As such, both the policy considerations set forth in the Pullman doctrine and a weighing of federalism, comity, and sound judicial administration counsel the court to stay the proceedings in this case.

### III.  CONCLUSION

Upon reconsideration of the court's previous order (D.E. 154) and taking into account the recent decision by the First Circuit in Casiano-Montañez, the proceedings in the instant case are hereby **STAYED** pending the Puerto Rico Supreme Court's disposition of the issue of the validity of internal hiring calls in González Segarra.  All pending motions in the instant case (D.E. 80; 136; 137; 156) are hereby **DENIED WITHOUT PREJUDICE**.  The pretrial and settlement conference and the jury trial are **VACATED** *sine die*.  Within fifteen days of the Puerto Rico Supreme Court's ruling on this matter, defendants—who originally moved this court to abstain (D.E. 54; 58)—shall file an informative motion with a certified translation of its decision.  The parties are granted thirty days following the Puerto Rico Supreme Court's ruling to file dispositive motions in the instant case.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of February, 2013.

s/Marcos E. López<br>U.S. Magistrate Judge